The Rushing Produce Company *v.* Hilliard.

No errors having been committed on the trial in the justice's court, and the judgment rendered therein being right, the *certiorari* was properly overruled.                              *Judgment affirmed.*
June 26, 1893.

*Certiorari.* Before Judge Miller. Bibb superior court. November term, 1892.

Hilliard sued the Rushing Produce Company, and obtained a verdict for $65.78, which was sustained on *certiorari.* The evidence for plaintiff was: A telephone message came to Cronell, the delivery clerk at the E. T., V. & G. R. R. depot in Macon, about December 26th, to deliver 126 boxes of oranges, shipped to Cady, to the Mansfield Dray Line in order that said dray line might carry them to defendants. Cronell informed plaintiff of the message, delivered the oranges, and charged the freight to the Mansfield Dray Line, as was the custom when the railroad delivered freight to that line, and as was agreed between the railroad agent and the dray line. Cronell did not know who sent the telephone message, but has since learned that it was Weatherly of the Rushing Produce Company. At the end of the week, or when settlement was made for the freight delivered, this freight-bill was among those paid by the dray line through plaintiff. It was made out to Cady. Wyche carried the dray-bill and collected it next day after the oranges were delivered to defendants. About ten days afterwards he carried the freight-bill, and Rushing said he was out of funds just then, and asked him to call again. This happened repeatedly. Rushing offered his note payable in thirty days, but Wyche would

not accept it. Rushing never would pay the bill. He would ask Wyche to call again, and never intimated to him that the debt was not his own, nor said a word about his having paid the freight to Cady. Weatherly testified, that he made arrangements with plaintiff to bring up all the freight at the depot for the defendants, and the drayage would be paid at the end of the week, or whenever sent for; that "they" were to do all of the hauling for defendants; that he never had any authority to make any arrangements with them for paying any freight due by defendants, and never did make any such arrangements; that he telephoned to the freight agent to send up the oranges, but never said anything about the freight being paid; and that he heard Rushing tell plaintiff some time aftewards that he (Rushing) would pay the freight if plaintiff would give him time. Plaintiff testified, that he had an arrangement with defendants to pay all freight on goods at depot for them and dray them up to the store, and they would pay him the freight back when they paid the drayage; that he had acted on this arrangement ever since Rushing commenced business, and Rushing had never objected to it or receded from it, this being the first freight-bill he ever declined to pay; that Rushing repeatedly promised to pay this bill, and never denied his liability for it until after the suit was begun, and never claimed he had given Cady the money to pay it until a day or two before the suit was filed; that he did not send the freight-bill when he sent the dray-bill; that the drayage was paid; that when he settled with the railroad company for freight, he found this bill for the oranges and paid it, and then carried it to Rushing, who said he would pay it the day after, but never paid it; that some time in January Rushing mentioned about Cady owing the freight, and plaintiff got Cady and carried him to Rushing, and Cady said he had left the money with Rushing

to pay the freight, which Rushing denied; and that after plaintiff had paid the freight, Rushing sent down the order from Cady for the oranges, with nothing about the freight on the order.  Plaintiff put in evidence this order, which was simply a direction from Cady to deliver the oranges consigned to him to defendants, and was dated December 29th.  Mansfield testified, that he was part owner of the Mansfield Dray Line, plaintiff owning a third and one Cherry a third ; that if this bill were lost witness would lose a third of it, or if paid he would get back a third of it; that they divided the profits and loss equally between them, having an agreement to this effect; and that plaintiff managed the business. Rushing never intimated to Mansfield that he did not himself owe the debt, nor that it was Cady's debt. Mansfield, Carter and plaintiff conducted each his part of the business of the dray line in his own name.  Plaintiff owned his mules, drays and other property in his own right, hired and paid his hands, paid his bills and ran his accounts as if there were no one else interested, but the firm name was Mansfield Dray Line.   The business each did was privately kept between them and not for the public, and they only pooled the results. Some time in January Rushing came to witness and told him he would pay the dray line the bill for the oranges if witness would give him twenty days, but witness told him he could not do so and would see the other parties. Witness never agreed to give him any time.   Plaintiff also introduced a receipted bill for the freight, made out against Cady, amounting to $66.78.

Defendants moved for a nonsuit on the grounds : (1) That plaintiff had not shown a right of action in him, the freight having been paid by the Mansfield Dray Line, which was a company, and due to them, if to anybody, and they alone had the right of action.   (2) That the evidence showed that the bill was made without any

authority from the defendants, and, being a debt of Cady due to the railroad company, defendants were not liable for it, unless they had assumed payment of it in writing. This motion was overruled.

For defendants Rushing testified: I bought the oranges from Cady, went down to examine them and paid him full value for them, and he was to have paid the freight. Weatherly ordered them to be brought up, and next day the dray-bill was brought up and I paid it. Nothing was said about the freight-bill until, about ten days after that, plaintiff brought it and said I must pay it. I told him I did not owe it, but that our relations had been such I would pay him, but could not then, but if he would give time and take an acceptance I would pay it. This he refused to do. I am under no obligation to pay it, as it was not due the railroad by defendants, and I never authorized them to pay any freight, only what was due by defendants. I have paid every bill but this one, which was the only one sent to me where the goods were consigned to another person, and I never authorized them to pay this. I thought it was paid; Cady told me so. He is due them the freight, and not defendants.

The errors assigned in the petition for *certiorari* were, that the court erred in refusing the nonsuit; that the verdict was contrary to the evidence and law; and that the jury found against the plea of the statute of frauds, the promise to pay the debt not being in writing.

M. G. BAYNE, for plaintiffs in error.
STEED & WIMBERLY, *contra*.